[Civ. No. 402.   Fourth Appellate District.—August 15, 1930.]

A. M. SOUTHARD et al., Appellants, v. DAVID R. HIG-
BEE, Respondent.

James G. Pfanstiel for Appellants.

A. M. Thompson for Respondent.

BARNARD, J.—The plaintiffs, as contractors, built a house for the defendant for a specified sum as set forth in a written agreement. This action was filed to recover $1496.47 for work and service performed and materials furnished, in supplying and constructing certain extras in connection with the erection of such residence. The defendant answered denying all of the allegations in the plaintiffs' complaint and through ten counterclaims, sought damages for an alleged failure of the plaintiffs to construct said residence in accordance with the contract. The trial court found that there was due to the plaintiffs for extras the sum of $1139.96, further found in favor of the defendant upon certain of the counterclaims, awarding damages in the total sum of $1519.50, and gave judgment in favor of the defendant for the difference, amounting to $379.54. From this judgment the plaintiffs have appealed, the questions involved being almost entirely of fact rather than of law.

It is first contended that the court erred in reducing the demand of the appellants in the amount of $104, which represented the amount paid by them for the installation of a heating plant, in excess of an allowance of $300 for

that purpose provided in the contract. The evidence shows without contradiction, that the defendant and his wife personally selected a heating plant which was priced to them by a heating contractor at $404, accepted by them and installed, and that appellants had nothing to do with this except that they paid the bill. In connection with this same matter, respondent set up a counterclaim, asking damages in the sum of $300 on the ground that the heating plant was installed by the plaintiff, that it was deficient in workmanship, and that it had to be replaced. In regard thereto, the court found as follows:

"Seventh Counterclaim.

"The Court finds that in the construction of the furnace in said building, said contract provided for an allowance of $300; and that any expense above $300 is chargeable to said defendant, and that said plaintiffs are not liable therefor; that said furnace was installed in a good workmanlike manner; and that said defendant is not entitled to recover under said seventh counterclaim."

That finding is supported by the evidence. There is no finding to justify the court in deducting this $104 from appellants' claim, and a careful reading of the transcript discloses no evidence that would support such a finding, had it been made. It would appear that the deduction had been made by inadvertence. There being no evidence to sustain this, and the only finding being to the contrary, it must be set aside.

The second and third specifications of error relate to the refusal of the court to allow to appellants, an item of $76.66 for compensation insurance, trucking and supervision in connection with furnishing the extras in question, and also an item of $77.54, which was claimed as a profit of ten per cent on the cost of a portion of the extras. Appellant A. M. Southard testified that he could remember no definite conversation or agreement in regard to these items. He was unable to testify as to the exact amount he claimed for compensation insurance, for trucking, or for supervision in connection with these extras, as distinguished from the main part of the job. It does not clearly appear that he was entitled to any profit as distinguished from compensation for supervision. The entire testimony is probably too indefinite to have sustained a finding in favor of appel-

lants on those items; and in any event, the decision of the trial court cannot be disturbed under the showing made.

■ . It is next insisted that the court erred in allowing the respondent $300 damages because of the faulty construction of a certain terrace. It is argued that this finding is not sustained by the evidence. One of the witnesses testified that it would cost $250 to correct this defect. In addition, there was evidence that because thereof, rain had gone through to certain rooms, damaging the plaster and finish, all of which was noted by the court on a personal inspection. We think there is sufficient evidence to sustain this finding of damage.

■ A similar contention is made in regard to a finding that the respondent was damaged in the sum of $75 because of the improper construction of certain French doors. There is ample evidence that the doors in question were not watertight, and that respondent was compelled to employ another workman to remedy the defect.

The next and principal contention of appellants is that the court erred in finding damages for the respondent in the sum of $500 under his ninth counterclaim. As to that matter, the court found as follows:

"Ninth Counterclaim.

"The Court makes the same finding as Finding III (1) which by reference is made a part of this finding the same as though fully stated herein; and the Court further finds that in and by said contract and specifications the said plaintiffs were responsible for the correctness of the location of said building and garage; that said plaintiffs negligently and carelessly failed to place said building in the proper position on said lots, and placed said building in such position that it was necessary, in order to comply with the plans and specifications, to construct certain portions of said building as an extension of said building into and on the street adjoining said premises; all of which has caused defendant damage in the sum of $500."

■ In this connection, it is also urged that the court erred in receiving into evidence a certain perspective drawing of the residence in question, and also in finding as follows: "that said contract consisted of written specifications, blue print plans, and perspective drawing of said house." The finding that this perspective drawing of the house was

a part of the contract is not supported by the evidence. The uncontradicted evidence shows that it was originally planned to build this residence upon certain lots in San Diego. At that time the perspective drawing in question was made. It was then contemplated to put a garage under the main part of the house. Later, the plans were changed and the house was built upon other lots, and because of a difference in the contour of the property, the garage was then placed on the outside of the house, instead of within it. After the change in plans was made, a written contract was entered into which provided as follows: "that said buyer shall pay to A. M. Southard at San Diego, the sum of $16,051 for completed house as per blue print plans and according to specifications." There was attached to said contract a set of six blue-print drawings, and what is apparently quite a complete set of specifications. Not only was the perspective drawing in question prepared in connection with preliminary negotiations on a different lot, and while it was intended to place the garage underneath the house rather than at its side, but all prior negotiations were merged in the written contract. The court was therefore in error in finding that the perspective drawing was a part of the contract. While the defendant testified that he continued to use it for reference after the change in plans, so far as the record shows, this was not brought home to the appellants in any way, and the perspective drawing in question should never have been received in evidence.

The court's finding that the plaintiffs failed to place the building in the proper position on the lots is also not supported by the evidence. This controversy apparently arose because the perspective drawing above referred to, pictures a wall projecting out to the side of the house a considerable distance, although it is impossible to tell what this distance is. When the house was completed, respondent protested that this wall did not extend out as far as he expected, this apparently resulting from the fact that the garage, on the outside of the house, took so much space. Although the house was placed within two feet seven inches of one line, the width of the lot permitted only a short projecting wall between the house and the other property line, on a side street. When this became apparent, after taking it up with appellants, respondent signed the following order:

"Change Order.

"Customer     Dr. Higbee          Date 12/21/25

"The A. M. Southard Co. is hereby authorized to make, if possible, the following changes or additions, to be subject to the provisions of a certain existing contract, by and between the A. M. Southard Co. and the undersigned, with the exception that the acceptance of this work shall in no way change or delay the payments under the terms of the original contract. The undersigned agrees to pay all extra costs arising from these changes or additions upon completion of this order.

"Build wall, from existing wall on N. west Corner, extending to line of side walk, same height and thickness of present wall with a 12x12 Buttress on end—to have 3 ft. arch passage and gate—

"No charge on Buttress—balance time and material."

Thereupon, appellants built the wall to the sidewalk line. Later, respondent succeeded in getting the city to narrow the street, giving him an additional three feet on that side. Respondent now contends that had appellants placed the house properly on the lot, the projecting wall could have been built entirely upon his property. It would appear that had appellants placed the house on the property line, instead of two feet seven inches away, they would have been subject to censure as it is not customary in residence districts to build houses flush with the property line. In any event, the wall was extended to conform with respondent's ideas, a distance of nine feet six inches. It is apparent that, had the building been placed two feet and seven inches farther over, the wall would still have had to be extended into the street. Not only was the perspective in question not a part of the contract, but the actual written contract, with blue-prints attached, shows the wall shortened down as originally built by the contractor, and as necessitated by the placing of the garage on the outside of the main dwelling. We have carefully gone over this evidence, and we find no contradiction of the fact that the house and wall, as originally built by the contractor, were entirely upon respondent's property and were exactly in accordance with the blue-prints and specifications which were made a part of the contract. There is therefore no evidence to support the finding of the court that the plaintiffs failed to place

the building properly on the lot, or that the respondent was damaged thereby. The subsequent change was made by order of the respondent. In this respect it is also significant that while the court allowed the respondent damages because this wall had to be extended beyond the property line, although this had been done at the request of the respondent, the court allowed the appellants the amount of the extra cost of building the additional length of wall, in accordance with the change order above set forth. Thus the court, in effect, found that the additional portion of the wall was not included in the original contract, which is exactly what the evidence shows. The award for this item of damage being entirely unsupported by the evidence, the finding of the ninth counterclaim must be set aside.

For the reasons given, the judgment is reversed, with directions to the trial court to add the sum of $104 to the amount allowed to the appellants on their claim for extras, to deduct the sum of $500 from the amount of damages allowed to respondent on his counterclaims, and to enter judgment accordingly.

Cary, P. J., and Ames, J., *pro tem.*, concurred.